# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 8

OCTOBER TERM, A.D. 2024

January 14, 2025

L. MICHAEL SORENSEN and SHERI M.
SORENSEN, individually and as Trustees of
the Sheri M. Sorensen Living Trust dated
May 15, 2012; JENNIFER ANNE TWISS and
SCOTT JAMES TWISS,

Appellants
(Plaintiffs,

v.                                                        S-24-0132

SEAN HALLING and MELISSA HALLING;
THE TOWN OF AFTON, a Wyoming
municipal corporation; and THE
GOVERNING BODY OF THE TOWN OF
AFTON,

APPELLEES
(Defendants).

*Appeal from the District Court of Lincoln County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellants:*
    James Kendall Sanderson, Sanderson Law Office, Afton, Wyoming.  Argument by
    Mr. Sanderson.

*Representing Appellees Sean Halling and Melissa Halling:*
    No appearance.

*Representing Appellees The Town of Afton and The Governing Body of the Town of
Afton:*

Dale W. Cottam and Brandon Bud Taylor, Bailey, Stock, Harmon, Cottam, Lopez LLP, Afton, Wyoming.  Argument by Mr. Taylor.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]     Appellants L. Michael Sorensen, Sheri Sorensen, Jennifer Twiss, and Scott Twiss appeal the district court's decision to dismiss their declaratory judgment action against the Town of Afton for failure to exhaust administrative remedies.  Because the district court correctly applied the law related to exhaustion of remedies when municipal zoning variances are challenged, we affirm.

## *ISSUES*

[¶2]     While the parties presented several issues, we consider only the dispositive issue of whether Appellants were required to exhaust administrative remedies specified in the Afton Land Development Code (LDC).

## *FACTS*

[¶3]     In August 2021, Sean Halling applied to the Town of Afton (Town) for a variance to allow him to build an accessory building on his property that would have a 1,320 square-foot footprint and be two stories tall.  At the time of his application, the LDC limited accessory buildings to 900 square feet.  Appellants were neighbors of Mr. Halling and received notice of the variance application.  No one objected to the proposed variance, and the Planning and Zoning Board recommended the Town Council approve the variance and provided a staff report.  In September 2021, the Town Council approved the variance at a public hearing, adopting the staff report and its findings.

[¶4]     On February 14, 2022, the Town's Zoning Administrator approved a modification of the variance from a 30'x44' building to 32'x50', increasing the building's footprint by 280 square feet, for a total footprint of 1,600 square feet.  That variance modification occurred without public notice or additional public processes.  In March, the Town issued a building permit for the building's foundation.  In May, the Town issued a building permit for a 3,200 square-foot building, with a notation that the prior building permit was for the foundation only.  As construction began, Appellants observed the building was larger than the initial variance, and at least one became concerned the building may be used for short-term rentals which was not part of the initial variance application.

[¶5]     In October 2022, after the building was complete and almost a year after the Town approved the initial variance, Appellants sent a letter to the Town asking for the building permit to be suspended, removal of the building, attorneys' fees, and punitive damages.  In December 2022, Appellants filed a declaratory judgment action in district court to challenge the variance and the Zoning Administrator's decision to modify the variance.[1]

---

[1] The Complaint also alleged claims against the Appellants' and Mr. Halling's homeowners' association. Those claims were resolved prior to summary judgment and are not part of this appeal.

The parties cross-filed for summary judgment. The court found in favor of the Town, concluding (1) the Appellants failed to exhaust their administrative remedies and (2) the matter was moot because the LDCs had changed and now allowed for buildings of this size without a variance. Appellants timely appealed.

## STANDARD OF REVIEW

[¶6]   We review decisions on summary judgment de novo, affording no deference to the district court's ruling. *Sellers v. Claudson*, 2024 WY 69, ¶ 10, 550 P.3d 69, 564–65 (Wyo. 2024) (citations omitted). We review it in the "same light as the district court, using the same materials and following the same standards," and we may affirm a summary judgment order on any basis in the record. *Loepp v. Ford*, 2024 WY 63, ¶ 24, 550 P.3d 96, 104 (Wyo. 2024) (citation omitted).

[¶7]   Summary judgment decisions based on exhaustion of administrative remedies are examined through the additional lens of abuse of discretion. District courts "ha[ve] discretion to decline jurisdiction over a claim for which a party has failed to exhaust his administrative remedies," and we review such decisions for an abuse of discretion. *Hanft v. City of Laramie*, 2021 WY 52, ¶ 20, 485 P.3d 369, 378 (Wyo. 2021) (evaluating a summary judgment decision based on exhaustion of administrative remedies); *Devon Energy Prod. Co., LP v. Grayson Mill Operating, LLC*, 2020 WY 28, ¶¶ 10–12, 458 P.3d 1201, 1205 (Wyo. 2020) (evaluating a decision on a motion to dismiss de novo but reviewing that decision related to exhaustion of administrative remedies for abuse of discretion). A court abuses its discretion if it acts in a manner that exceeds the bounds of reason under the circumstances, violates some legal principle, or ignores a material factor deserving significant weight. *Ruppert v. Merrill*, 2024 WY 113, ¶ 11, 558 P.3d 529, 534 (Wyo. 2024) (citation omitted).

## DISCUSSION

[¶8]   The Afton LDC provides an administrative procedure for appealing the Town Council's variance decisions and decisions of the Zoning Administrator.[2] Because Appellants clarified at oral argument that the Zoning Administrator's decision, which occurred second, is the focus of this appeal, we first discuss Appellants' available remedies for challenging that decision.

---

[2] We apply the LDC in effect at the time of the two decisions. The Town Council replaced the 2009 LDC in September 2022. However, the Town Council repealed and replaced the variance provisions of the 2009 LDC on April 14, 2020, two years before the comprehensive LDC revisions. We apply the 2020 variance provisions to the Town Council's initial variance decision, along with the unamended provisions from the 2009 LDC. For the Zoning Administrator's decision, we apply the 2009 LDC.

***I. The district court did not abuse its discretion when it determined that Appellants failed to exhaust available administrative remedies for challenging the Zoning Administrator's decision.***

[¶9]    The LDC expressly provides that any decision of the Zoning Administrator may be appealed to the Afton Board of Adjustment within thirty days.  LDC §§ 17-6-1.1, -1.3(a) (2009).  If there is no Board of Adjustment, then appeals are to the Town Council acting as the Board of Adjustment (hereinafter Town Council/BOA).  *Id.* at § 17-6-1.2 ("In the absence of any Board of Adjustment, any order or decision of the Zoning Administrator . . . may be appealed to the Afton Town Council."); *see also id.* § 17-1-7(a)(7) ("In the event that a Board of Adjustment is not created, the Afton Town Council make [sic] [may] act in this capacity until a Board is created.").  Once the Town Council/BOA issues its decision, then that decision is appealable to the district court "pursuant to Rule 12 of the Wyoming Rules of Appellate Procedure."  LDC § 17-6-1.3(b)(10).

[¶10]   It is uncontested that Appellants did not appeal the Zoning Administrator's decision to the Town Council/BOA.  Generally, where an agency prescribes an administrative process for resolving disputes, the parties must exhaust those administrative remedies before seeking court intervention.  *Thomas Gilcrease Found. for Gilcrease Hoback One Charitable Tr. v. Cavallaro*, 2017 WY 67, ¶ 12, 397 P.3d 166, 70 (Wyo. 2017) (citing *People v. Fremont Energy Corp.*, 651 P.2d 802, 811 (Wyo. 1982)); *see Devon Energy Prod. Co.*, 2020 WY 28, ¶ 32, 458 P.3d at 1211 ("[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.").  "[S]ince agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise." *Thomas Gilcrease Found.*, 2017 WY 67, ¶ 12, 397 P.3d at 170 (quoting *Quinn Revocable Trust v. SRW, Inc.*, 2004 WY 65, ¶ 19, 91 P.3d 146, 152 (Wyo. 2004)). [3]

[¶11]   Appellants assert they were not required to exhaust administrative remedies because the decisions of the governing bodies of cities and towns are not subject to Wyoming Administrative Procedures Act (WAPA) review.  Wyo. Stat. Ann. § 16-3-101(b)(i) (2023); *Albertson's, Inc. v. City of Sheridan*, 2001 WY 98, ¶ 25, 33 P.3d 161, 170–71 (Wyo. 2001);

---

[3] There is an exception to the general exhaustion rule.  In some instances, even when there is a prescribed administrative appeal process, a declaratory judgment may be appropriate if the party "bringing the action asserts issues which only the courts have the authority to decide; i.e., the validity and constitutionality of administrative rules." *Ford v. Bd. of Cnty. Comm'rs of Converse Cnty.*, 924 P.2d 91, 93 (Wyo. 1996) (citations omitted); *Thomas Gilcrease Found.*, 2017 WY 67, ¶ 13, 397 P.3d at 170 ("If the party's 'desired relief concerns the validity and construction of agency regulations, or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be, based, a declaratory judgment action should be entertained,' even though the party has not exhausted the administrative process." (cleaned up) (citing *Rocky Mountain Oil & Gas Ass'n v. State*, 645 P.2d 1163, 1168 (Wyo. 1982)).  The district court concluded Appellants did not provide a basis to apply this exception, and Appellants do not contend otherwise on appeal.

*Foster's Inc. v. City of Laramie*, 718 P.2d 868, 872 (Wyo. 1986); *City of Evanston v. Whirl Inn, Inc.*, 647 P.2d 1378, 1385 (Wyo. 1982).

[¶12]  Appellants overlook that the legislature included employees and officers of towns and cities—here, the Zoning Administrator—as agencies whose decisions are subject to judicial review through the WAPA.[4]  Wyo. Stat. Ann. § 16-3-101(b)(i).  Moreover, the LDC's appeal provisions are consistent with the legislature's express directives to towns and cities.  Municipal Boards of Adjustment are to hear and decide appeals from "any order, requirement, decision or determination made by an administrative official charged with the enforcement of any ordinance."  Wyo. Stat. Ann. § 15-1-608(a)(i)(A); *see also id.* § 15-1-607 (providing the same appeal process and that an appeal stays the underlying action).  Then, "[t]he decision of the board [of adjustment] may be reviewed by the district court pursuant to Rule 12 of the Wyoming Rules of Appellate Procedure."  *Id.* § 15-1-609.  The LDC's appeal provisions precisely align with that statutory sequence.  *See State ex rel. Baker v. Strange*, 960 P.2d 1016, 1018 (Wyo. 1989) ("The right of review from a city agency . . .  is addressed by this language in our Wyoming statutes." (citing Wyo. Stat. Ann. § 15-1-607(a))).  As the district court concluded, an appeal of the Zoning Administrator's decision is subject to the administrative appeal procedures specified in the LDC and would also be subject to judicial review under W.R.A.P. 12.

[¶13]  We have consistently upheld these administrative appeal processes.  For example, in *Sikora v. City of Rawlins*, the city's building inspector issued some building permits. 2017 WY 55, ¶ 8, 394 P.3d 472, 475 (Wyo. 2017).  Once construction began, a neighbor raised concerns about the building.  *Id.* at ¶ 9.  The city's administrative code provided a vehicle for redress—the neighbor could appeal the building inspector's decisions to the city's Board of Adjustment.  *Id.* at ¶ 15, 394 P.3d at 476.  The complaining neighbor filed a declaratory judgment action instead.  *Id.*  The district court concluded the neighbor failed to exhaust administrative remedies and we affirmed.  *Id.* at ¶ 18, 394 P.3d at 477.

[¶14]  We held similarly in *Epp v. Mayor of Dubois*, 894 P.2d 590 (Wyo. 1995).  In *Epp*, a neighbor sought a writ of mandamus to contest the town's approval of certain building

---

[4] Wyo. Stat. Ann. § 16-3-101(b)(i) defines "agency" as:

> any authority, bureau, board, commission, department, division, officer or **employee** of the state, a county, **city or town** or other political subdivision of the state, **except the governing body of a city or town**, the state legislature, the University of Wyoming, the judiciary, the consensus revenue estimating group as defined in W.S. 9-2-1002 and the investment funds committee created by W.S. 9-4-720[.]

(emphasis added).

permits.[5]  *Id.* at 591.  The district court dismissed the action because Mr. Epp did not exhaust the administrative remedy of appealing to the board of adjustment, and we affirmed.  *Id.* at 595 ("It would be an unfortunate policy decision to permit a party to avoid an administrative process which encompasses discretion by invoking the writ of mandamus.  We emphasize the discretionary power of the board of adjustment . . . to 'hear and decide special exemptions to the terms of the ordinance.'  We hold the dismissal by the district court can be sustained because of the failure of Epp to invoke the administrative remedy.").

[¶15]  The district court's reasoning in this case was similar to that in *Sikora* and *Epp*.  The LDC prescribed a mandatory procedure that would have allowed the Town Council, sitting as the Board of Adjustment, to exercise its discretion in reviewing the Zoning Administrator's decision.  Appellants did not follow that procedure, and the district court therefore did not abuse its discretion in concluding they failed to exhaust their administrative remedies.

[¶16]  Appellants contend they should not be confined to the LDC's administrative remedies because they did not have actual notice of the Zoning Administrator's decision until after Mr. Halling began construction, well after the thirty-day appeal period.  *Sikora* instructs otherwise.  As here, the Rawlins city code did not require notice be given to the neighbors of the disputed building permit and the neighbors only began to suspect there was a code violation after construction began.[6]  *Sikora*, 2017 WY 55, ¶ 17, 394 P.3d at 477.  In affirming for failure to exhaust administrative remedies, we relied on the rule that "in the absence of any other notice, once a party has actual notice of what he or she believes to be a zoning violation, that party must at least attempt to seek any available administrative review of the alleged zoning violation within a reasonable time."  *Id.* at ¶ 18 (citing *Baker*, 960 P.2d at 1018–19).[7]

---

[5] Appellants did not bring a mandamus action under Wyo. Stat. Ann. §§ 1-30-101 to -118 or seek a writ of mandamus in their complaint's claim for relief.  However, their motion for summary judgment seeks writs of mandamus against the Town and Mr. Halling as a form of relief.

[6] In Afton, variance applications are subject to actual notice of the proposed variance to neighbors within 300 feet of the subject property; public notice of the same published in a local newspaper; and a public hearing.  LDR § 17-2-8 (2009 & 2020 amend.).  Variance decisions are not subject to additional notice to the public or neighbors.  *Id.* at § 17-2-8(i).

[7] Unlike other administrative review cases that strictly measure the appeal deadline from the date of the decision, the statutes governing municipalities allow for more leniency.  *Compare Antelope Valley Improvement Dist. v. State Bd. of Equalization*, 992 P.2d 563, 567 (Wyo. 1999) ("A rule that provides thirty days after the date of the decision to file an appeal does not entitle the recipient to file the appeal thirty days after actual notice of the decision.") *with Baker*, 960 P.2d at 1018  (holding that appeals to the Board of Adjustment "shall be taken within a reasonable time," even if that means a time longer than the appeal period prescribed by the municipal ordinance, because "reasonable time" is prescribed by the governing statute, Wyo. Stat. Ann. § 15-1-607).

[¶17] The record supports the district court's finding that the size of the building was known in June 2022, but no administrative appeal followed. Appellant Jennifer Twiss testified that she learned the new building had a second story of livable space and might be used for a short-term rental in late May or early June of 2022. She then sent emails to the Zoning Administrator in June and August followed by a phone call in September. Only in mid-October 2022 did counsel for the Appellants send a demand letter to the Town. In *Baker*, we concluded sending a letter was inadequate to exhaust administrative remedies, 960 P.2d at 1018, and in *Sikora* we expressly held parties must seek administrative review within a reasonable time after receiving actual notice. 2017 WY 55, ¶ 18, 394 P.3d at 477 (citation omitted). Appellants did not make an effort to seek an administrative appeal once they had actual notice of the size of the new building.

### *II. The untimely and collateral appeal of the initial variance is also barred by the exhaustion of remedies doctrine.*

[¶18] Though Appellants concede the focus of this appeal is on the Zoning Administrator's decision to modify the variance, they nonetheless also ask us to consider the Town Council's initial approval of the variance. Specifically, they contend the Town Council did not make adequate findings under the LDC provisions to support the variance. There is no dispute that Appellants were aware of the initial variance application, did not oppose it, and did not seek to appeal the decision after it was made. Rather, they seek to collaterally and untimely attack the initial variance decision now that they contest the subsequent decision of the Zoning Administrator modifying that variance.

[¶19] The district court concluded the Town Council was acting as the Board of Adjustment when it approved the variance, and that Appellants forfeited the right to appeal that decision. This was an issue of law, requiring interpretation of the ordinances and governing statutes, which we review de novo. *Coffinberry v. Bd. of Cnty. Comm'rs of Cnty. of Hot Springs*, 2008 WY 110, ¶ 3, 192 P.3d 978, 980 (Wyo. 2008) ("An issue of statutory interpretation presents a question of law. We accord no deference to the district court on issues of law[.]" (citation omitted)).

[¶20] The LDC in effect at the time of the variance is not a model of clarity. As noted above, the LDC's variance provisions were amended in 2020, with other provisions from 2009 left unchanged. The 2009 LDC required the Planning and Zoning Board to make variance decisions, which could then be appealed to the Town Council. LDC § 17-2-8 (2009). *See* Wyo. Stat. Ann. § 15-1-605(c) (allowing the mayor to appoint the town's planning commission as the board of adjustment). The 2020 LDC amendments expressly removed that authority from the Planning and Zoning Board and realigned the variance procedures with the statute giving variance authority to the Board of Adjustment and requiring appeals be made to the district court. *Compare* LDC § 17-2-8 (2020 amend.)

with Wyo. Stat. Ann. §§ 15-1-608 (listing the authority of the boards of adjustment), -609 (specifying the appeal process).

[¶21]   However, rather than specifying the "Board of Adjustment" as the decision-making body, the 2020 LDC amendment referred instead to the "Town Council."  Notably, the 2009 LDC provisions that remained unchanged in 2020 continued to authorize the Town Council to act as the Board of Adjustment, unless or until the Town Council formally appointed a separate Board.  LDC § 17-1-7(a)(7) (2009) ("In the event that a Board of Adjustment is not created, the Afton Town Council make [sic] [may] act in this capacity until a Board is created.").

[¶22]   The district court recognized the logical alignment of the zoning statutes, the 2009 LDC, and the 2020 LDC variance provisions, and we do, too.   For the reasons stated below we conclude the Town Council was acting in its capacity as the Board of Adjustment when it considered the Planning and Zoning Board's recommendation and staff report and approved the variance.

[¶23]   "In interpreting a municipal ordinance, we rely on our usual rules of statutory interpretation."  *Sikora*, 2017 WY 55, ¶ 23, 394 P.3d at 479 (citations omitted).   "[A] primary rule of statutory construction, which applies equally to the construction of a municipal ordinance, is that legislative enactments are intended to be logical, reasonable, and just."  *Snake River Brewing Co. v. Town of Jackson*, 2002 WY 11, ¶ 29, 39 P.3d 397, 408 (Wyo. 2002) (citations omitted)).   We also must construe ordinances "as a whole, giving effect to every word, clause, and sentence."  *Sikora*, 2017 WY 55, ¶ 23, 394 P.3d at 479.

[¶24]   The legislature crafted a zoning template for cities and towns – Wyo. Stat. Ann. §§ 15-1-601 to 611; within that template the legislature authorized the appointment of boards of adjustment to conduct public meetings specifically to decide zoning variances and hear the appeals of persons aggrieved by the zoning decisions of administrative officers -605 to -609.  The statutes specify that district courts have jurisdiction to review board of adjustment decisions pursuant to W.R.A.P. 12.  Following this template, the LDC provides for the appointment of a BOA, but permits the Town Council to act in that capacity if a board is not formally appointed.  Like the statute, the LDC expressly specifies that the appeal of a variance decision is to the district court pursuant to W.R.A.P. 12.  Nothing in the LDC indicates the Town of Afton intended to vary from that statutory template notwithstanding reference in the 2020 variance amendments to the "Town Council."  Reviewing the LDC provisions as a whole, there was no need to reference a board of adjustment.  The functionality remained the same, and Appellants failed to appeal the variance decision to the district court within a reasonable time as the statutes and LDC prescribed.

[¶25]    This conclusion is buttressed by our required presumption that the Town Council passed the 2020 amendment to the LDC with full knowledge of existing law. *Seherr-Thoss v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2014 WY 82, ¶ 19, 329 P.3d 936, 945 (Wyo. 2014) ("[W]e presume that the legislature enacted the statutes 'with full knowledge of existing law, . . . we construe statutes in harmony with existing law, particularly other statutes relating to the same subject or having the same purpose.'" (citation omitted)).  Thus, the Council understood its decisions as Town Council were not subject to WAPA review. *See* Wyo. Stat. Ann. § 16-3-101(b)(i); *Albertson's*, 2001 WY 98, ¶ 25, 33 P.3d at 170–71.  Yet, the 2020 amendment provides for review of "Town Council" decisions on variances.  LDC § 17-2-8(l) (2020).  The logical conclusion is that the Council understood and intended that it would be acting in its capacity as the Board of Adjustment when ruling on variances, consistent with the unchanged 2009 LDC that designated the Town Council as the Board of Adjustment when none had been appointed.

[¶26]  Appellants argue they were not required to exhaust the prescribed administrative remedy because the Town Council lacked statutory authority to act as the Board of Adjustment.  The record contains no indication that Appellants made this argument to the district court, and we do not consider new arguments on appeal unless they are jurisdictional or fundamental.  *Hensel v. DAPCPA RPO LLC*, 2023 WY 84, ¶ 30, 534 P.3d 460, 468 (Wyo. 2023) ("[T]his Court will not consider an issue raised for the first time on appeal unless it is jurisdictional or of such fundamental nature that it must be considered.") (citing *Colton v. Town of Dubois*, 2022 WY 138, ¶ 2 n.1, 519 P.3d 976, 978 n.1 (Wyo. 2022)).  Appellants have not asserted that this argument is either.  Moreover, we have recognized that a delayed collateral attack on an entity's authority to act cannot be used to bypass an administrative remedy.  *Epp*, 894 P.2d at 595 ("It is clear, however, Epp also was aware the town council served as the acting board of adjustment until a board could be appointed, and he is charged with knowledge of the remedy of administrative review. Epp should have sought review of the grant of the permit and, if he believed the council could not sit as the board of adjustment, should have demanded the appointment of the board.  He did not pursue this remedy."); *see also City of Torrington v. Zoning Comm'n of Harwinton*, 806 A.2d 1020, 1024–25 (Conn. 2002) (cleaned up) ("The rule requiring interested parties to challenge zoning decisions in a timely manner  'rests in large part on the need for stability in land use planning and the need for justified reliance by all interested parties—the interested property owner, any interested neighbors and the town—on the decisions of the zoning authorities.'").

## *CONCLUSION*

[¶27]  The district court did not abuse its discretion when it correctly relied on and applied our precedent governing exhaustion of administrative remedies when challenging

8

municipal zoning decisions.  It also correctly reconciled the governing ordinances with the zoning appeal structure prescribed by the legislature.  We affirm.

**FENN, J., dissenting.**

[¶28]  I respectfully dissent.  My approach to this case is fundamentally different from that taken by the majority.  I disagree with the majority's conclusion Appellants' claims are barred by a failure to exhaust administrative remedies.  Because the Afton Town Council is not an "agency," its decisions are not governed by the WAPA or subject to judicial review under Rule 12 of the Wyoming Rules of Appellate Procedure (W.R.A.P.).  Further, the record unequivocally shows the Afton Town Council failed to follow the procedures set forth in the Afton LDC when it granted the variance.  Therefore, the variance is null and void.  Further, because the Town has not created a Board of Adjustment, the LDC failed to create administrative remedies for Appellants to pursue prior to filing this suit.  I would remand this matter back to the district court to determine the appropriate remedy.

**FACTS**

[¶29]  In addition to the facts set forth in the majority opinion, I find the facts set out below are relevant to the resolution of this matter.

[¶30]  The Hallings purchased two lots in the Rockbridge Meadows Subdivision and merged them into a single 1.1-acre parcel.  They built their primary residence on the lot in the summer of 2019, with plans to build an accessory building in the future.  According to their own summary judgment filings, the Hallings always planned for their accessory building to include a second-story guest space.  When the Hallings began the process of applying for a building permit for the accessory building, they learned they needed to apply for a variance due to its proposed size.  When applying for their variance in August 2021, the Hallings did not disclose their intention to include a guest space in the accessory building.  In fact, in the letter included with their application, the Hallings indicated the purpose of the "1,320 square foot[8] shed/shop" was to "store items that [they did] not want parked on the side of [their] home . . . [and] to store various equipment in a protected area to ensure a well-kept property."  In late August and early September 2021, the Town Clerk published a copy of the Hallings' letter in the Star Valley Independent to give surrounding property owners, including Appellants, notice of the variance the Hallings were seeking.

[¶31]  As required by LDC § 17-2-8(d), the Zoning Administrator prepared a staff report where she analyzed the Hallings' variance application using the mandatory considerations set forth in LDC § 17-2-8(h).  Although she found the Hallings' variance application did not satisfy at least three of these considerations, she still recommended approval of the

---

[8] The majority states the variance application indicated the building would have a "1,320 square-foot footprint."  However, the Hallings' letter indicated the total square footage of the "shed/shop" including the second floor or loft space would be 1,320 square feet.  After the initial variance was approved, the Hallings' accessory building grew to a 3,200 square foot, two-story building.

variance with certain conditions, including that the accessory building not be used as an additional dwelling unit.

[¶32]   As required by LDC § 17-2-(8)(g), the Planning and Zoning Board reviewed the Zoning Administrator's staff report and the eight mandatory considerations set forth in LDC § 17-2-8(h) at a public meeting held on September 13, 2021.  Although the Hallings' variance application did not satisfy all the considerations in LDC § 17-2-8(h), the Planning and Zoning Board recommended approving the variance subject to the conditions suggested by the Zoning Administrator.  At a public meeting held the following day, the mayor informed the Town Council that the Planning and Zoning Board had approved the variance application as presented, with certain conditions, and the Town Council unanimously approved the variance.

[¶33]   When questioned at the hearing before the Town Council about whether he intended to put guest quarters within the accessory building, Mr. Halling stated "not at this time." Yet, when he filed for his building permit in October 2021, Mr. Halling described the accessory building as a "residential building and Accessory Building."   The Zoning Administrator emailed Mr. Halling, telling him he needed to correct the description on the building permit to reflect what the Town would "actually be permitting."

[¶34]   In February 2022, Mr. Halling emailed the Zoning Administrator informing her he was looking to grow his building from "30x44" to "32x50."   This email did not state whether the accessory building was going to be one or two stories tall.   The Zoning Administrator informed Mr. Halling she could "administratively consider the additional 280 SF to be a reasonable deviation and within tolerances to not require an additional variance application."   The Zoning Administrator has admitted there is nothing in the LDC that allows her to administratively approve deviations to variances.   Because Mr. Halling did not go through the variance procedure for the expansion of the accessory building, the surrounding landowners had no notice of his intention to expand the size of the building. In addition, because Mr. Halling did not go through the variance procedure for the expanded accessory structure, neither the Zoning Administrator, Planning and Zoning Board, nor the Town Council considered the expanded accessory building in light of the mandatory considerations in LDC § 17-2-8(h).

[¶35]   In March 2022, Mr. Halling applied for a building permit listing the type of construction as a "residential shop/apt," with the word residential redacted.   This building permit was for the foundation only.   In May 2022, Mr. Halling applied for a second building permit for a 3,200 square foot, two-story building.   Unlike the variance procedure, the LDC does not require notice to surrounding landowners of building permit applications. LDC § 17-2-9.2.   Appellants had no written notice of the Hallings' application for this permit, the proposed expansion of the size of the accessory building, or the Hallings' intent to include a guest quarters in the building.

[¶36] As constructed, the accessory building consists of a three-car garage, with 1,600 square feet of living space on the second floor. In May or June 2022, Appellant Jennifer Twiss learned from a neighbor the Hallings intended to use the living space in the accessory building as a rental property. Ms. Twiss emailed the Zoning Administrator about her concerns regarding the size and use of the accessory building in late August or early September 2022. Ms. Twiss also had telephone conversations with the Zoning Administrator in early September 2022 regarding the Halling accessory building. Appellants did not attempt to file any administrative appeals and instead filed this action in December 2022.

## DISCUSSION

### I. *The Town Council is Not an Agency Under the WAPA*

[¶37] The majority correctly notes where an agency prescribes an administrative process for resolving disputes, the parties must generally exhaust those administrative remedies before seeking court intervention. *Cavallaro*, 2017 WY 67, ¶ 12, 397 P.3d at 170 (citing *Fremont Energy Corp.*, 651 P.2d at 811). However, the Town Council, as the governing body of a town, is not an agency under the plain language of the WAPA. Therefore, its decisions are not subject to review under the WAPA.

[¶38] The WAPA defines "agency" as:

> "Agency" means any authority, bureau, board, commission, department, division, officer or employee of the state, a county, city or town or other political subdivision of the state, **except the governing body of a city or town**, the state legislature, the University of Wyoming, the judiciary, the consensus revenue estimating group as defined in W.S. 9-2-1002 and the investment funds committee created by W.S. 9-4-720[.]

Wyo. Stat. Ann. § 16-3-101(b)(i) (LexisNexis 2023) (emphasis added). The majority concludes the Town Council was acting in the capacity of a Board of Adjustment when it approved the variance, and therefore it was an agency under the WAPA. However, when looking at the legislative history of the statutory definition of "agency," it is clear the legislature intended to explicitly exempt the governing bodies of cities and towns from this definition, regardless of what role or capacity they are sitting in when making decisions. The definition of agency in the 1965 version of the WAPA included governing bodies of cities and towns:

> "Agency" means any authority, bureau, board, commission, department, division, officer or employee of the state, a county,

12

> a municipality or other political subdivision of the state, except the state legislature and the judiciary.

1965 Wyo. Sess. Laws Ch. 108 § 1. This definition was amended in 1977 to exclude governing bodies of cities and towns when acting in certain capacities:

> "Agency" means any authority, bureau, board, commission, department, division, officer or employee of the state, a county, city or town or other political subdivision of the state, except the governing body of a city or town **when acting in a legislative capacity, or when hearing appeals from hearings held in accordance with the Wyoming Administrative Procedures Act**, the state legislature and the judiciary.

1977 Wyo. Sess. Laws Ch. 107 § 1 (emphasis added). The legislature amended this definition again two years later, to completely exempt governing bodies of cities and towns from the definition of agency when acting in any capacity:

> "Agency" means any authority, bureau, board, commission, department, division, officer or employee of the state, a county, city or town or other political subdivision of the state, except the governing body of a city or town, the state legislature and the judiciary[.]

1979 Wyo. Sess. Laws Ch. 154 § 1. We recognized the importance of this change in *City of Evanston v. Whirl Inn, Inc.*, 647 P.2d at 1385 (holding due to the change in the definition of "agency," judicial review of liquor-licensing decisions made by the governing bodies of cities and towns was no longer governed by the WAPA). Our cases since 1977 have recognized administrative decisions made by the governing bodies of cities or towns "are not reviewable pursuant to the procedures of the [WAPA] because a [town or] city council is not an agency." *Albertson's Inc,* 2001 WY 98, ¶¶ 25–29, 33 P.3d at 170–72 (citing *Whirl Inn, Inc.*, 647 P.2d at [1385]) (holding the WAPA did not apply to a city council's decision regarding a liquor license); *see also Foster's Inc*, 718 P.2d at 870, 872 (holding a district court properly dismissed a petition for review of a city council's decision on a bond issue).

[¶39]   "The right to judicial review of administrative decisions is entirely statutory." *Vance v. City of Laramie*, 2016 WY 106, ¶ 11, 382 P.3d 1104, 1106 (Wyo. 2016) (quoting *Casper Iron & Metal, Inc. v. Unemployment Ins. Comm'n of Dep't of Emp.,* 845 P.2d 387, 391 (Wyo. 1993)). "[J]udicial review of an administrative decision is not available unless made so by statute." *Id.* (citing *Industrial Siting Council v. Chicago and North Western Transp. Co.,* 660 P.2d 776, 778 (Wyo. 1983)). "By specifically referencing statutory **limitation** of review, the WAPA provides broader authority to withhold judicial review by statute than its federal counterpart, the Administrative Procedure Act (APA), which allows for judicial

13

review 'except to the extent that statutes preclude judicial review.'" *Id.* at ¶ 13, 382 P.3d at 1107 (citing 5 U.S.C. §§ 701(a)(1) and 702). "[E]vidence of legislative intent to preclude judicial review can be found not only in the statute's express language, 'but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.'" *Id.* at ¶ 22, 382 P.3d at 1110 (quoting *Block v. Cmty. Nutrition Inst.,* 467 U.S. 340, 345, 104 S. Ct. 2450, 2453–54, 81 L. Ed. 2d 270 (1984)).

[¶40]   As the majority acknowledges, the legislature crafted a zoning template for cities and towns, Wyoming Statutes §§ 15-1-601 through 611.  The legislature specifically authorized the creation of boards of adjustments to conduct public meetings to decide zoning variances and hear appeals from persons aggrieved by the zoning decisions of administrative officers. Wyo. Stat. Ann. §§ 15-1-605 through 609.  Specifically, Wyoming Statute § 15-1-605 states:

> (a) The mayor, with the consent of the governing body, may appoint a board of adjustment consisting of not less than five (5) nor more than seven (7) members. Each member shall be appointed for a term of three (3) years, except that the initial appointments shall be:
>
> > (i) Two (2) for one (1) year;
> > (ii) Two (2) for two (2) years; and
> > (iii) The remaining member or members for three (3) years.
>
> (b) The governing body may remove any board member for cause upon written charges after public hearing. Vacancies shall be filled for the unexpired portion of a term.
>
> (c) The mayor, with the consent of the governing body, may appoint the city or town planning commission as the board of adjustment.

Nowhere in Wyoming Statutes §§ 15-1-605 through 611 does the legislature authorize the governing body of a city or town to serve as a board of adjustment should the town or city choose not to create one.  "The 'omission of words from a statute is considered to be an intentional act by the legislature, and this Court will not read words into a statute when the legislature has chosen not to include them.'" *Minter v. State*, 2023 WY 35, ¶ 24, 527 P.3d 1249, 1254 (Wyo. 2023) (quoting *BC-K v. State,* 2022 WY 80, ¶ 11, 512 P.3d 634, 638 (Wyo. 2022)).  The fact the legislature chose not to specifically allow governing bodies of cities and towns to serve as boards of adjustment is further evidence the legislature intended to preclude administrative review of these types of decisions if the governing body chose to make these decisions itself.

14

[¶41]   The majority is correct we must assume the Town Council created the Afton LDC with full knowledge of existing law. *Seherr-Thoss,* 2014 WY 82, ¶ 17, 329 P.3d at 944. Therefore, I agree with the majority that "the Council understood its decisions as Town Council were not subject to WAPA review." *See* Wyo. Stat. Ann. § 16-3-101(b)(i); *Albertson's*, *Inc.*, 2001 WY 98, ¶ 25, 33 P.3d at 170–71.   The majority summarily concludes "[n]othing in the LDC indicates the Town of Afton intended to vary from the statutory template . . . ."   However, the Town Council did choose to depart from the statutory template in a crucial way: by drafting LDC § 17-1-7(a) to allow the Town Council to serve as the Board of Adjustment until such time as a board was appointed.[9]  The Town Council may have intended to create procedures that would make its decisions subject to the WAPA. *See, e.g.*, LDC § 17-2-8([l]) (allowing decisions of the Afton Town Council to be appealed to the district court pursuant to W.R.A.P. 12); LDC § 17-6-1.3(10) (allowing decisions of the Board of Adjustment on appeals from decisions of the Zoning Administrator or the Building Inspector to be appealed to the district court pursuant to W.R.A.P. 12).   However, our law clearly states: "[T]he right to judicial review of administrative decisions is entirely statutory, the absence of subject matter jurisdiction cannot be waived, and jurisdiction cannot be created by agreement between the parties." *Vance*, 2016 WY 106, ¶ 42, 382 P.3d at 1114 (citing *Edsall v. Moore,* 2016 WY 71, ¶ 10, 375 P.3d 799, 802 (Wyo. 2016); *Casper Iron & Metal,* 845 P.2d at 391; *North Laramie Land Co. v. Hoffman,* 184 P. 226, 228 (1919)).   Therefore, the Town Council could not create a right to judicial review of its administrative decisions when such a review is not authorized by statute merely by adopting procedures consistent with the WAPA. *See id*. To hold otherwise not only creates jurisdiction where there is none, but it also expands the statutory definition of "agency."   We have long held "courts must follow, and cannot extend, statutory definitions." *Seherr-Thoss*, 2014 WY 82, ¶ 20, 329 P.3d at 945 (quoting *Scott v. Scott,* 918 P.2d 198, 200 (Wyo. 1996)).

[¶42]   The majority relies on *Epp v. Mayor of Dubois* to find the Town Council is subject to the WAPA when sitting as the Board of Adjustment. 894 P.2d 590.  However, *Epp* did not discuss the change in the definition of agency. *Id.* at 595.  Instead, it merely stated Mr. Epp was aware the town council was serving as the Board of Adjustment, and if he believed it could not do so, he should have demanded the appointment of the board. *Id.*  The *Epp* opinion did not discuss the legislative history of the WAPA or our holding in *Whirl Inn* that administrative decisions made by the governing bodies of cities and towns were no

---

[9] In their reply brief, Appellants also asserted the Town Council did not have authority to grant the variance because nothing in Wyoming Statute § 16-1-605 authorizes the governing body of a city or town to act as a board of adjustment if one is not appointed.  However, I agree with the majority that nothing in the designated record shows Appellants raised this issue below, and we should not address it for the first time on appeal. *Sorum v. Sikorski*, 2024 WY 124, ¶ 2, 559 P.3d 153, 157 (Wyo. 2024) (citing *Williams v. Tharp*, 2017 WY 8, ¶¶ 10–11, 388 P.3d 513, 517 (Wyo. 2017)) (we "strongly adhere to 'our general rule that we will not consider issues not raised in the court below'" unless "the issue is jurisdictional or so fundamental that it must be considered").  For the purposes of this dissent, I will only address Appellants' argument that the Town Council is not an agency, even when it is acting as the Board of Adjustment.

longer subject to review under the WAPA. 647 P.2d at 1385. Had it done so, it should have reached the conclusion that although the town council could sit as the board of adjustment, its decisions would not be subject to administrative review if it chose to do so.

[¶43] Because the Town Council is not an agency, its decisions are not subject to the WAPA or the requirement to exhaust administrative remedies. Appellants are persons whose rights, status, or other legal relations are affected by a municipal ordinance, and they are seeking a declaration of their rights, status, or other legal relations. Therefore, filing a declaratory judgment action to challenge the Town Council's decision was proper. *See* Wyo. Stat. Ann. § 1-37-103 (LexisNexis 2023).

## II. *The Town Council Improperly Granted the Variance*

[¶44] The Town Council did not comply with the LDC when it approved the Hallings' variance. The LDC that was enacted in 2009 and amended in 2020, set forth a variance procedure that was designed to "modify the strict application of the requirements of the Afton Zoning Regulations." LDC § 17-2-8(b). This process allowed a variance to be granted where it could be shown "that unusual site or building characteristics, extraordinary circumstances, or other relevant factors, prevent a landowner from using a lot or land parcel for purposes permitted in the zoning district where the property is located." *Id.* In determining whether to approve or deny a variance application, the LDC required the Zoning Administrator and the Planning and Zoning Board to "use and address" eight "considerations." LDC § 17-2-8(d), (g), (h). The Afton LDC stated:

> **No variance shall be authorized unless** the Afton Planning and Zoning Board determines that **all of the following exist**.
>
> (1)　The variance will not authorize a permitted use other than those specifically authorized in the zoning ordinance in the district regulations.
>
> (2)　Enforcement of the provisions of the Afton Zoning Ordinance will result in unnecessary hardship, and prevent a landowner from using a lot or land parcel for purposes which are similar to other land use in the same zoning district.
>
> (3)　The extraordinary circumstances of physical site constraints were not created by the owner of the property and do not represent a general condition of the zoning district where the property is located.

16

(4)     The variance will not substantially or permanently damage any adjacent property that contains a conforming land use.

(5)     The variance will not alter the character of the zoning district where the variance would occur.

(6)     The variance is a reasonable deviation from the Afton Zoning Ordinance that affords the relief sought by the landowner.

(7)     The variance will be generally consistent with Chapter 3 of the Afton Land Development Code and the community land use plan contained in the Town of Afton Municipal Master Plan.

(8)     The variance will not adversely affect the public health safety or welfare of the community.

(Emphasis added). The evidence in the record unequivocally established the variance was granted even though the Hallings' application failed to meet all of the mandatory considerations set forth in LDC § 17-2-8(h). The Zoning Administrator's staff report showed the Hallings' variance application did not satisfy considerations number (2) or (3), and she did not make any findings on consideration number (7). Similarly, the Planning and Zoning Board noted the Halling's application did not satisfy all of the mandatory considerations, but it still recommended approval. Likewise, the Town Council unanimously approved the Hallings' variance application, even though the Planning and Zoning Board did not find all the considerations in LDC § 17-2-8(h) were satisfied. The requirement that variances not be approved unless they satisfied all of these considerations remained unchanged in the 2022 amendments to the LDC. Regardless of whether Appellants contested the Hallings' variance application at that time, the Town Council had an obligation to follow the LDC, and had it done so, the variance would never have been approved. Therefore, the variance was improperly granted, and it is null and void.

### III.   There were no Administrative Remedies to Exhaust

[¶45] The majority concludes Appellants cannot challenge the Zoning Administrator's administrative expansion of the variance because they failed to exhaust their administrative remedies. "Under the exhaustion doctrine, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Hanft*, 2021 WY 52, ¶ 21, 485 P.3d at 378 (quoting *Devon Energy Prod. Co.,* 2020 WY 28, ¶ 32, 458 P.3d at 1210). The purpose of this doctrine is to "prevent[] judicial intrusion on the administrative process and allow[] the administrative entity with the

relevant expertise to engage in fact finding and any required application of discretion." *Sikora*, 2017 WY 55, ¶ 14, 394 P.3d at 476.

[¶46] The application of the exhaustion doctrine in this case presupposes that the Town Council created "an administrative process to govern zoning decisions." *Id.* at ¶ 15, 394 P.3d at 476. Both the 2009 and 2022 LDC state orders and decisions made by the Zoning Administrator "may" be appealed to the Board of Adjustment or to the Town Council if the Board had not been created. LDC §§ 17-6-1.1, 17-6.1.2. The Town never created a Board of Adjustment, and as discussed above, the Town Council is not an agency, whether or not it is sitting in the capacity of that Board. Therefore, the LDC failed to create an administrative process to govern zoning decisions. Even if Appellants wanted to follow the process set forth in the LDC for challenging the Zoning Administrator's decisions, there was no "agency" before whom they could file such an administrative appeal. For these reasons, the exhaustion doctrine does not apply to preclude Appellants from challenging the Zoning Administrator's decisions.

## IV.  The Case is not Moot

[¶47] Although not addressed by the majority, as an alternative reason for dismissing Appellants' claims on summary judgment, the district court found the case was moot because the 2022 and 2023 amendments to the LDC increased the permissible size of an accessory building, and the Hallings' accessory building would now be allowed without a variance. The district court erred when it made this finding.

[¶48] Section 17-1-2 of the 2022 LDC states: "Any past land use regulation entitled 'Zoning and Land Use', as adopted and as subsequently amended is repealed. The adoption of the Afton Land Development Code shall not affect or prevent any pending or future prosecution of, or action to abate, an existing violation of prior regulations." The Hallings' alleged violations predated the adoption of the 2022 LDC, and this section makes clear the adoption of the new code did not affect the pending or future prosecution of actions to abate those violations. In addition, although the 2022 and 2023 amendments to the Afton LDC increased the permissible size of accessory buildings, that does not automatically mean no variance would be required for the Hallings' accessory building. The 2022 amendments limit guest quarters to 900 square feet. LDC § 17-3-2.2(b)(1) (2022). As constructed, the Hallings' accessory building has 1,600 square feet of guest quarters. Therefore, to have lawfully constructed this accessory building, the Hallings still would have needed a variance. In addition, LDC § 17-7-2 prohibits guest quarters from being rented or leased on either a short-term or long-term basis. *See also* LDC § 17-3-2.2(b)(3) (authorizing "Bed-and-breakfast operation[s]" in an R-1 district only in the principal residence on the property that is operated by the property owner, not in a separate accessory building). Thus, if the Hallings wanted to use the guest quarters as a rental property, this too would require a variance. However, the Town Council likely could not grant such a variance because LDC § 17-2-8(h)(1) prohibits the granting of a variance if it would

18

"authorize a permitted use other than those specifically authorized in the zoning ordinance in the district regulations." Renting the guest quarters on either a short-term or long-term basis is not permitted in an R-1 zone. LDC §§ 17-7-2, 17-3-2.2(b)(3). Because Appellants are not precluded from pursuing violations of the prior LDC and there are questions of fact about whether the Hallings' accessory building complies with the amended LDC, there remains a justiciable controversy between these parties, and the case is not moot.

## V. *Balancing of the Equities*

[¶49] Appellants' complaint sought a declaratory judgment the Town was obligated to enforce the LDC and suspend and revoke the building permit. It also sought an injunction preventing the Town from allowing the continued construction of the accessory building. Appellants also sought a declaratory judgment the Hallings are obligated to follow the procedures and requirements of the LDC, and an injunction preventing them from continuing to construct the accessory building. Because the accessory building is now complete, in their summary judgment motion, Appellants sought to retract the approval of the variance, nullify the building permits issued to the Hallings, and require the Hallings to abate the accessory building to conform with the example shown in the drawings submitted with their application for the variance. Because the district court dismissed the case, it did not engage in a balancing of the equities to determine what the appropriate relief would have been.

[¶50] Injunctions and abatements are requests for equitable relief, "which are not granted as a matter of right but are within the lower court's equitable discretion." *Winney v. Jerup*, 2023 WY 113, ¶ 13, 539 P.3d 77, 82 (Wyo. 2023) (quoting *Olsen v. Kilpatrick*, 2007 WY 103, ¶ 9, 161 P.3d 504, 507 (Wyo. 2007)); *Bd. of Cnty. Comm'rs of Teton Cnty. v. Crow*, 2007 WY 177, ¶ 15, 170 P.3d 117, 122 (Wyo. 2007) (holding the district court did not abuse its discretion when it balanced the equities and denied the request for abatement). Factors to be considered include the gravity and willfulness of the violation, a delay in asserting one's rights, and the discrepancy between the costs and benefits of an injunction. *Winney*, ¶ 27, 539 P.3d at 85 (citing 42 Am. Jur. 2d *Injunctions* § 15 (May 2023 update)). There are certainly some facts in the record that suggest the Hallings acted willfully and concealed their true intentions from the Town and their neighbors. The Hallings constructed a guest quarters in the accessory building, despite the approval of the variance being conditioned upon it not being used as an additional dwelling unit. However, it is generally for the district court to weigh the equities in the first instance. *Id.* (citations omitted). I would remand this case to the district court to determine whether an injunction or abatement was proper in this case.

## CONCLUSION

[¶51] Because the Town Council is not an agency under the WAPA, I would find Appellants' claims are not barred by the failure to exhaust administrative remedies. The

uncontroverted evidence shows the Hallings' variance did not satisfy all the mandatory considerations under LDC § 17-2-8(h) and should never have been granted. In addition, the exhaustion doctrine does not apply to preclude Appellants from challenging the Zoning Administrator's decisions. The 2022 and 2023 amendments to the LDC did not make this case moot, and there continues to be a justiciable controversy. This case should be remanded to the district court to weigh the equities and determine the proper remedy.